118 F.3d 118
 133 Lab.Cas. P 33,548, 3 Wage & Hour Cas.2d
(BNA) 1822
 Lawrence AHERN; Richard Anderson; Anthony Antonucci;
Richard Baribault; Robert E. Bishop; John W. Carlsen;
John L. Costello; Cliff Daley; George L. Davis, III;
Harry E. Ellis; Herbert R. Faust; Monty H. Gerbush; James
F. Garside; Nicholas J. Holden; Andrew M. Kenny; Daniel
S. Lishansky; John F. McCarthy; Kennedy McGoff; Robert W.
McGuigan; Frank E. Matzen; Michael Miglino; George T.
Morrish; Richard L. Rubin; Gary W. Ruff; Charles P.
Stein; Arthur F. Thompson; Paul A. Tully; Anthony Vessa;
Kenneth J. Carey; William R. Dimmler; William F.
Gutersloh; Walter H. Hass; Stephen J. McDonald; John A.
Sharp; Thomas M. Skelly; Gordon F. Stevens; Palmer G.
Tagle; Joan P. Yale, Plaintiffs-Appellants,
v.
The COUNTY OF NASSAU, Thomas S. Gulotta, as County Executive
of the County of Nassau, Police Department of the County of
Nassau; Donald F. Kane, Commissioner of the Police of the
County of Nassau, Defendants-Appellees.
 No. 895, Docket 96-7742.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 14, 1997.
Decided July 3, 1997.
 
 Harry Greenberg (Robert J. Burzichelli, Theodore C. Richman), Solomon Richman Greenberg P.C., Lake Success, NY, for Plaintiffs-Appellants.
 Michael T. Hopkins (Tracy Prevost Lebowitz), Hopkins, Kopilow & Weil, Garden City, NY, for Defendants-Appellees.
 Before JACOBS, CALABRESI, and LAY,* Circuit Judges.
 CALABRESI, Circuit Judge.
 
 I. BACKGROUND
 
 1
 The plaintiffs are high-ranking police officers who brought this class action against their employer, the County of Nassau Police Department ("Department"), alleging a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. The FLSA generally requires employers to provide overtime compensation for hours worked in excess of a prescribed work week. 29 U.S.C. § 207. On appeal, it is not disputed that the defendants failed to pay the plaintiffs overtime for at least two years. The defendants will thus be liable to the plaintiffs unless the plaintiffs fall within an exception to the coverage of the FLSA. Since the only exemption the defendants claim with respect to the plaintiff officers is the "bona fide executive" exemption, the sole issue before us is whether the Department was freed from the overtime requirements of the FLSA by that provision.
 
 
 2
 "Bona fide executives," who are not subject to the FLSA overtime requirements, 29 U.S.C. § 213(a)(1), are defined in pertinent part as employees who are remunerated, inter alia, on a salary basis, 29 C.F.R. § 541.1(f). To be compensated on a salary basis, an employee must regularly be paid a predetermined amount that "is not subject to reduction because of variations in the quality or quantity of the work performed," 29 C.F.R. § 541.118(a), with the exception that the employee may be fined "for infractions of safety rules of major significance," 29 C.F.R. § 541.118(a)(5).
 
 
 3
 At trial, the plaintiffs maintained that they did not fall within the "bona fide executive" exemption because they were not paid on a salary basis. In support of this claim, they adduced Article 9, Rule 6.3.e of the Nassau County Police Department Rules and Regulations, which the parties agreed were generally binding on the plaintiffs. Rule 6.3.e provides that:
 
 
 4
 [for] any violation of the Rules and Regulations of the Police Department, County of Nassau ... the Commissioner of Police has the power to discipline a member of the Force or Department by: 1) Reprimand. 2) Fine. 3) Suspension with or without pay. 4) Dismissal or removal from the Force or Department. 5) Reduction in grade below that in which [the member is] serving, after which [the member's] compensation shall conform with that of the grade to which [the member is] reduced....
 
 
 5
 The plaintiffs argued that this rule permits the Police Commissioner to dock their pay for minor infractions, and therefore makes their wages "subject to reduction because of variations in the quality or quantity of the work performed" even in the absence of a major safety rule violation.
 
 
 6
 The defendants countered that it was not the actual practice of the Department to impose penalties for infractions other than major safety violations. They relied on the testimony of Police Commissioner Donald Kane that he would generally punish minor infractions with no more than a verbal reprimand. They further noted that the plaintiffs could only adduce one instance, in 1990, of a fine being imposed for a non-safety violation. Responding to the interrogatories posed by the parties, the jury found that the Department did not have a policy that docked the wages of its employees for minor infractions of the rules. The plaintiffs then moved for judgment as a matter of law pursuant to Rule 50.[1] The district court denied the motion and entered judgment for the defendants. This appeal ensued.
 
 II. DISCUSSION
 
 7
 When reviewing the denial of a motion for judgment as a matter of law, this court must engage in essentially the same function as the district court. Bonura v. Chase Manhattan Bank, N.A., 795 F.2d 276, 277 (2d Cir.1986) (per curiam). We must therefore determine if,
 
 
 8
 viewing the evidence in a light most favorable to the non-moving party, (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.
 
 
 9
 Id. (citation and internal quotation marks omitted). In this case, it is clear that the jury's determination was not "the result of sheer surmise and conjecture" or contradicted by "overwhelming evidence." The verdict that no actual policy of pay deductions existed for infractions other than major safety violations was supported by Kane's statement that his general practice was not to impose fines. And this statement was not contradicted by the fact that the plaintiffs were able to adduce one lone incident in which such a fine was imposed.[2]
 
 
 10
 While the jury's determination was supported by the evidence, it was irrelevant at the time judgment was entered. At that point, the prevailing standard in this circuit was that the "bona fide executive" exemption did not apply if an employee's pay could be reduced, regardless of whether in practice employees' pay ever was reduced. Yourman v. Dinkins, 826 F.Supp. 736 (S.D.N.Y.1993), aff'd, 84 F.3d 655, 656 (2d Cir.1996), vacated, Giuliani v. Yourman, --- U.S. ----, 117 S.Ct. 1078, 137 L.Ed.2d 213 (1997).[3] The parties do not dispute that the Department rules explicitly permitted such reductions in pay. Thus, if Yourman were still the applicable law, this would be an easy case requiring reversal.
 
 
 11
 While this appeal was pending, however, the Supreme Court decided Auer v. Robbins, --- U.S. ----, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), which resolved the conflict between those circuits holding that the mere possibility of docking pay was sufficient to deny the exemption,[4] and those circuits holding that actual docking was required.[5] Because "an appellate court must apply the law in effect at the time it renders its decision," Thorpe v. Housing Auth., 393 U.S. 268, 281, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969), we are bound to apply the new standard promulgated in Auer. We can either do this ourselves by reconsidering the case in the light of Auer, or we can remand to the district court with instructions that it do so. We choose the former option because the relevant facts are undisputed and we can therefore make the determination of whether the Auer standard is met as a matter of law. See Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co., 93 F.3d 1064, 1072 (2d Cir.1996) ("An appellate court has the power to decide cases on appeal ... if the record as a whole presents no genuine issue as to any material fact.") (citations and internal quotation marks omitted).
 
 
 12
 Under Auer, exempt status will be denied only "if there is either an actual practice of making ... deductions or an employment policy that create[d] a 'significant likelihood' of such deductions." Auer, --- U.S. at ----, 117 S.Ct. at 911. There is no question that an "actual practice" of making deductions did not exist in this case. Indeed, that is in all probability the meaning of the jury's verdict. But even if there were any doubt in the matter, the facts of Auer are sufficiently similar to those before us to compel the conclusion that the plaintiffs cannot show an "actual practice" of pay docking as that phrase is defined by Auer. Specifically, Auer states that one incident of pay docking is insufficient to establish any such practice. See id. at ----, 117 S.Ct. at 912. The plaintiffs will therefore be subject to the "bona fide executive" exemption unless they can show that the defendant's policy created a significant likelihood of deductions.
 
 
 13
 A finding of "significant likelihood" pursuant to Auer requires the existence of a "clear and particularized policy--one which effectively communicates that deductions will be made in specified circumstances." Id. at ----, 117 S.Ct. at 911 (internal quotation marks omitted and emphasis added). No such policy exists in this case. The plaintiffs before us, unlike those in Auer, definitively showed that their employment manual stated that the relevant deductions could be made from the salaries of employees in their class.[6] They did not demonstrate, however, that the manual communicated that such deductions would in fact be made in specified circumstances. In other words, the plaintiffs could not point to any rule that stated that if they committed a specific infraction, their pay would be docked. And this is what we read Auer to require.
 
 
 14
 Because the plaintiffs have not shown an actual practice or "significant likelihood" of pay docking, they fall within the "bona fide executive" exemption.
 
 III. CONCLUSION
 
 15
 Since, under the Auer standard, the plaintiffs fall within the "bona fide executive" exemption, we affirm the judgment of the district court.
 
 
 
 *
 The Honorable Donald P. Lay, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 As of December 1, 1991, the Federal Rules of Civil Procedure no longer use the terms "directed verdict" and "judgment notwithstanding the verdict." The term "judgment as a matter of law" now encompasses both pre-verdict and post-verdict motions. See Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir.1993)
 
 
 [2]
 In a deposition, Kane stated, in passing, that officers "would" be fined for violations of the rules, but the context indicates that he may have erroneously used this word interchangeably with the word "could." The district court was apparently of this view, because it prevented the plaintiffs from going over this testimony during the trial on the ground that it was duplicative of direct testimony. The plaintiffs allege that the court erred in doing so. They may well be right. But given the ambiguous nature of the deposition testimony and the paucity of other evidence showing any actual policy of pay-docking, we can "say with fair assurance that the jury's verdict was not substantially swayed by the exclusion of [Kane's testimony]." Malek v. Federal Ins. Co., 994 F.2d 49, 55 (2d Cir.1993) (paraphrasing harmless error standard laid out in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). We therefore find that the error, if any, was harmless
 
 
 [3]
 That standard was established in the district court opinion in Yourman, which was the only case in this circuit to have addressed the issue when the district court in the instant case entered judgment. Shortly thereafter, the Second Circuit affirmed the Yourman district court
 
 
 [4]
 The Second, Seventh, Ninth, Tenth, and D.C. Circuits had held that the prerogative to dock pay, even if unexercised, deprived an employer of the exemption. See Yourman, 84 F.3d at 656; Bankston v. Illinois, 60 F.3d 1249, 1253 (7th Cir.1995); Abshire v. County of Kern, 908 F.2d 483, 487 (9th Cir.1990); Carpenter v. City of Denver, 82 F.3d 353, 359 (10th Cir.1996), vacated, --- U.S. ----, 117 S.Ct. 1078, 137 L.Ed.2d 213 (1997); Kinney v. District of Columbia, 994 F.2d 6, 11 (D.C.Cir.1993)
 
 
 [5]
 The Eighth and Eleventh Circuits had held that actual docking was required to strip the employee of the executive status she would otherwise have had. See McDonnell v. City of Omaha, 999 F.2d 293, 296-97 (8th Cir.1993); Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 805 (11th Cir.1991)
 
 
 [6]
 The Auer Court found that while the employment manual in that case permitted pay-docking in some situations, it was unclear whether it allowed the pay-docking of high-ranking employees in the petitioner's class. Auer, --- U.S. at ----, 117 S.Ct. at 911. In contrast, it is clear that the manual in this case permits deductions for high-ranking employees, because it allows such deductions for any violation of the rules, Nassau County Police Department Rules and Regulations, Article 9, Rule 6.3.e, and a fair number of these rules apply only to high-ranking employees such as the plaintiffs, see, e.g., id., Article 1, Rule 15. But in the end, this distinction is not telling. For Auer did not specify that the lack of clarity in the manual it examined was necessary to its holding. It simply used that fact as one example of what would suffice to show that a policy did not effectively communicate that deductions would be made. Auer, --- U.S. at ----, 117 S.Ct. at 911