Robert KELLY;  Mark Hackett;  Richard
Craparo and Walter Roland,
Plaintiffs–Appellants,

v.

CITY OF MOUNT VERNON,
Defendant–Appellee.

Docket No. 98–7034.

United States Court of Appeals,
Second Circuit.

Argued Nov. 3, 1998.

Decided Dec. 18, 1998.

Joseph P. Baumgartner, Trager, Cronin & Byczek, Lake Success, NY, for Plaintiffs–Appellants.

Ernest R. Stolzer, Rains & Pogrebin, P.C., Mineola, NY (Terence M. O'Neil, Rains & Pogrebin, P.C., Mineola, NY, and James P. Clark, Rains & Pogrebin, P.C., Mineola, NY, on the brief), for Defendant–Appellee.

Before: KEARSE and POOLER, Circuit Judges, and POLLACK, District Judge.*

POLLACK, Senior District Judge:

### PRELIMINARY

This case arises under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA" or "the Act"). The Act requires public law enforcement agencies to provide overtime compensation to their employees for hours worked in excess of a prescribed work week. 29 U.S.C. § 207(a)(1), (k). Plaintiffs-appellants, a Detective Lieutenant, two Detective Sergeants, and a Sergeant, are employees of a public law enforcement agency. Unless exempted under the FLSA, they are entitled to receive overtime pay for the hours that they have worked in excess of their prescribed work period.

The Act exempts from the FLSA's overtime compensation provisions "any employee in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited . . . by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1). The Secretary of Labor's regulations provide that an employee qualifies for the "bona fide executive" exemption if the employee satisfies a "duties" test and is paid on a "salary basis." 29 C.F.R. § 541.1. Appellants concede that they perform the duties of an " 'employee employed in a bona fide executive . . . capacity.' " *Id.* § 541.1(a)-(e) (quoting 29 U.S.C. § 213(a)(1)). Therefore, if appellants are compensated on a salary basis, as defined by 29 C.F.R. § 541.118, they are not entitled to overtime compensation under the FLSA.

Appellants commenced a civil rights action in the district court pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, alleging that they are entitled to overtime compensation. Plaintiffs moved for partial summary judgment on the issues of liability, statute of limitations, and liquidated damages pursuant to Fed.R.Civ.P. 56. The defendant moved for summary judgment dismissing plaintiffs' complaint in its entirety. On December 8, 1997, the district court issued a written Memorandum and Order granting defendant's motion for summary judgment and dismissing appellants' complaint in its entirety. Judgment dismissing the complaint in its entirety was entered on December 9, 1997. This appeal ensued.

### BACKGROUND

According to the Department of Labor's regulations,

> [a]n employee will be considered to be paid "on a salary basis" . . . if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed.

29 C.F.R. § 541.118(a); *see also Ahern v. County of Nassau,* 118 F.3d 118, 119 (2d Cir.1997). Employers may not make deductions for violations of minor rules, but "[p]en-

* Honorable Milton Pollack, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

alties imposed ... for infractions of safety rules of major significance will not affect the employee's salaried status." 29 C.F.R. § 541.118(a)(5). Additionally, "[d]eductions may not be made for absences of an employee caused by jury duty, attendance as a witness, or temporary military leave." *Id.* § 541.118(a)(4).

Plaintiffs-appellants are assigned to the Detective Division of the Mount Vernon Police Department ("the Police Department" or "the Department"). All Sergeants and Lieutenants in the Detective Division receive their compensation in equal, bi-weekly installments. Thus, the requirements of the salary basis test are satisfied as long as the plaintiffs' salaries are not "subject to reduction because of variations in the quality or quantity of the work [they] perform[ ]." *Id.* § 541.118(a)(1).

Although Lieutenants and Sergeants of other divisions within the Police Department are eligible to receive overtime compensation pursuant to the collective bargaining agreement between the City of Mount Vernon and the Department, superior officers of the Detective Division, including Sergeants, Detective Sergeants, and Detective Lieutenants, are not eligible to receive overtime compensation. Rather, for every hour that they work in excess of their prescribed work period, appellants receive "comp[ensation] time," which they may use as paid leave on future dates.

Appellants allege that they are "subject to" deductions of pay for disciplinary violations that do not amount to violations of "safety rules of major significance." All members of the Police Department, including appellants, are subject to the provisions of the Mount Vernon Police Department's Manual ("the Manual"), which contains a Code of Conduct ("the Code"). Violations of the Code can result in disciplinary action against any member of the Police Department through either a formal "Disciplinary Procedure" or "Com-

mand Discipline." According to Procedure number 2.062–1 of the Department's Administrative Guide ("the Guide"),[1] any member who is found guilty of charges brought pursuant to "Disciplinary Procedure" is subject either to dismissal or such other punishment as the Commissioner of Public Safety directs. The Manual does not delineate specific punishments for any particular violations of the Code.[2]

According to Procedure Number 2.063–1 of the Guide, "Command Discipline," which applies to minor violations of Police Department rules and regulations, may be voluntarily accepted by an officer in lieu of formal discipline and is discretionary on the part of the Police Department supervisors. The Guide also includes a non-exclusive list of violations, including non-safety related violations, that may be adjudicated through Command Discipline. Potential penalties include forfeiture of up to five vacation, personal, or award days, changes of up to four tours of duty, written or oral admonishment, or temporary change of assignment. However, the Manual's section on Command Discipline does not delineate specific punishments for any particular violations of the Code.

Appellants assert that they are "subject to" deductions of pay for absences caused by temporary military leave and attendance as a witness in non-Police Department related court proceedings. According to Mount Vernon Chief of Police Michael F. Mosca ("Chief Mosca"), "there is no specific provision of the Department's Manual or Rules or Regulations which specifically applies to military leave." Affidavit of Michael F. Mosca dated October 22, 1997, ¶ 12. However, Chief Mosca stated that the Police Department has always allowed its employees up to thirty calendar days of paid leave per year for military service in accordance with N.Y. Mil. L. § 242(b)(5) (McKinney) (providing that public employees shall be paid during military leave for a period not to exceed the

---

1. The Administrative Guide is also part of the Police Department Manual.

2. Prior to 1993, the Police Department Manual specifically provided the Commissioner of Public Safety with discretion to punish officers who violated various safety or non-safety related Code

provisions by dismissal, reprimand, forfeiture of time off, forfeiture of pay, or withholding of pay for not more than thirty days. However, the Manual did not contain specific penalties for any particular violations of the Code.

greater of 22 working days or 30 calendar days). *See* Mosca Aff. ¶ 12. Chief Mosca hypothesized that if any officer served more than thirty days of "temporary military leave," the officer would be permitted to apply any accumulated leave or sick leave days to avoid being placed on unpaid leave. *Id.* ¶ 14. He also hypothesized that if an officer served more than thirty days of "temporary military leave" and did not have any paid leave available, the officer would be considered to be on unpaid leave. *Id.* Plaintiffs offered no proof that any Lieutenant of Sergeant ever suffered a reduction in pay as a result of "temporary military leave."

According to Chief Mosca, "there are no specific Department rules with respect to paid or unpaid leave" applicable to "appearance in court for attendance as a witness in a non-Department related case." *Id.* ¶ 15. The Police Department does, however, allow employees to use "vacation, personal leave[,] or compensatory time" or switch tours of duty with another officer in order to enable them to appear in a non-Police Department related court proceeding. *Id.* ¶ 16. Plaintiffs did not submit any evidence indicating that any officer in the Police Department has ever suffered a pay reduction as a result of attending a non-Police Department related court proceeding.

Based on the above facts, the district court granted the City of Mount Vernon's motion for summary judgment, holding that the appellants "are salaried employees within the 'bona fide executive' exemption and are not entitled to overtime compensation under the FLSA."

## DISCUSSION

■ We review the district court's grant of summary judgment *de novo*. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir.1991). Summary judgment is proper where there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c).

■ In *Auer v. Robbins*, the Supreme Court adopted the Secretary of Labor's view that the salary basis test denies "exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.' That standard is met … if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." 519 U.S. 452, ——, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997). Thus, in the absence of evidence that disciplinary and other deductions have been made in the past, denial of the exemption is appropriate only if there is "a clear and particularized policy—one which 'effectively communicates' that deductions will be made in specified circumstances." *Id.* "In other words," the employees must be able to "point to [a] rule that state[s] that if they commit[ ] a specific infraction, their pay [will] be docked." *Ahern*, 118 F.3d at 122 (holding that high ranking police officers of the Nassau County Police Department are bona fide executives for purposes of the FLSA overtime exemption).

### A. *Disciplinary Deductions*

It is uncontested that pursuant to Command Discipline, one of the appellants, Sgt. Walter Roland, received a letter of warning advising him not to repeat prohibited conduct. He did not receive any other punishment. None of the other appellants have ever been subject to punishment pursuant to either the formal Disciplinary Procedure or Command Discipline. Appellants cite other examples, however, of penalties received pursuant to Command Discipline by Police Department officers from divisions other than the Detective Division. Such penalties include: (1) in 1996, a Lieutenant accepted four extra tours of duty for uttering ethnic slurs, (2) in 1989, a Lieutenant was reprimanded for improperly removing a police report and in 1990, the same Lieutenant accepted a forfeiture of five vacation days for altering a police report, and (3) a patrol Sergeant received discipline for failure to make proper notification.

■ Appellants cite no examples of Sergeants or Lieutenants in their division who have been subject to reductions in compensation pursuant to the formal Disciplinary Procedure or Command Discipline. Plainly, the

Police Department does not have an "actual practice" of imposing disciplinary deductions of pay for Rules and Regulations violations committed by Sergeants or Lieutenants in the Detective Division. *See Auer,* at ——, 117 S.Ct. at 911; *Ahern,* 118 F.3d at 121–22. Furthermore, the Police Department Code of Conduct and Command Discipline procedures do not "create[ ] a 'significant likelihood' of such deductions," because they fail to " 'effectively communicate[ ]' that deductions will be made in specified circumstances." *See Auer,* at ——, 117 S.Ct. at 909 (citations omitted). Chief Mosca's testimony indicating that the deductions delineated in the Code of Conduct apply to all officers, including those in the Detective Division, does not alter the analysis because there is no evidence that the "deductions would in fact be made in specified circumstances." *See Ahern,* 118 F.3d at 122 ("The plaintiffs ... showed that their employment manual stated that the relevant deductions could be made from the salaries of employees in their class. They did not demonstrate, however, that the manual communicated that such deductions would in fact be made in specified circumstances."). Thus, although the Department's discipline policy "nominally" applies to all officers in the Department, including those in the Detective Division, under *Auer,* "[n]o clear inference can be drawn as to the likelihood [of compensation reductions] being applied to employees such as [appellants.]" *Auer,* at —— – ——, 117 S.Ct. at 911–12.

■ Appellants cite examples in which the compensation of two officers in the Patrol Division of the Police Department may have been reduced pursuant to Command Discipline, and criticize an analysis of Department policy that limits its focus to the Detective Division. They contend that, in determining whether an "actual practice" of pay reductions existed, we should consider the Department as a whole. However, the collective

bargaining agreement dictating the terms of police officer pay clearly distinguishes detectives as a distinct police category. Under that agreement, Mount Vernon police officers except for detectives who hold the rank of Sergeant or higher are eligible for overtime pay. *See* Agreement Between the City of Mount Vernon and the Police Association of the City of Mount Vernon, Plaintiff's Exhibit 1, filed May 21, 1997, at 4 ("Police Officers and Sergeants, but excluding Detectives, shall receive time and one-half for all overtime ...."); *id.* at 9 ("Lieutenants and Captains, except those assigned to the Detective Bureau ... shall be paid at the rate of time and one half."); *id.* at 5 ("The City shall pay detectives, who do not hold the rank of [S]ergeant or higher, overtime in cash at the rate of time and one half...."). In light of the Supreme Court's specific inquiry into "punishment for employees in petitioners' category," *Auer,* at ——, 117 S.Ct. at 911, our separate analysis of the policies specifically applied to the Division—in which no "actual practice" of disciplinary pay reductions exists—is warranted.

B. *Temporary Military Service Deductions*

■ Appellants are not "subject to" deductions in pay caused by temporary military leave. Plaintiffs offered no proof that any Lieutenant or Sergeant ever suffered a reduction in pay as a result of "temporary military leave"; therefore, the Police Department does not have an "actual practice" of making such deductions. Furthermore, there is no evidence that there is a "significant likelihood" that such deductions will be made in the future; Chief Mosca's hypothetical assertion that an officer would be considered to be on unpaid leave if the officer lacked available sick or otherwise paid leave and served "temporary" military leave for a period of greater than thirty days [3] does not

---

**3.** Courts have held that military leave in excess of thirty days is not "temporary" pursuant to § 541.118(a)(4). These courts have reasoned that the purpose of the prohibition against making deductions for temporary military leave is to prevent employers from penalizing employees for participating in the National Guard or Reserve Service. *See Spradling v. City of Tulsa,* 95 F.3d

1492, 1502 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997) (noting that National Guard and Reserve Service require only 15 and 14 days, respectively, of active duty training each year); *see also Quirk v. Baltimore County, Maryland,* 895 F.Supp. 773, 782 (D.Md.1995) (holding that military leaves in excess of 15 days caused by the Gulf War could

constitute a "clear and particularized policy ... which 'effectively communicates' that deductions will be made in specified circumstances." *See Auer*, at ——, 117 S.Ct. at 911.[4]

### C. *Deductions for Non–Police Department related Court Appearances*

█ Likewise, appellants are not "subject to" deductions caused by "appearance as a witness." The Police Department does not have an actual practice of docking its employees pay for such appearances; there is no evidence that any officer has ever received a pay deduction for appearing as a witness. Furthermore, the Police Department has no written policy with regard to non-Police Department related court appearances. Thus, it lacks a "clear and particularized policy ... which 'effectively communicates' that deductions will be made in specified circumstances." *See Auer*, at ——, 117 S.Ct. at 911.

### CONCLUSION

Appellants are not entitled to receive overtime pay pursuant to 29 U.S.C. § 207(a)(1) & (k).

The undisputed facts in this case establish that the Police Department does not have an "actual practice" of docking Sergeants or Lieutenants in the Detective Division for committing minor violations of Police Department Rules and Regulations, taking military leave, or appearing in non-Police Department related court proceedings. Furthermore, the Police Department does not have a "clear

not be considered "temporary" under § 541.118(a)(4)). It is not necessary for this Court to rule on this issue, however, because appellants are not "subject to" deductions for taking military leave.

4. The court below ruled that the regulatory provisions of the salary-basis test regarding military leave and court appearances are an impermissible exercise of regulatory power as applied to public sector employers because principles of public accountability prevent public employers from paying their employees for time spent not working. *See also Close v. State of New York*, 1996 WL 67979, at \*6, (N.D.N.Y. Feb.13, 1996) (noting that the principle of Public Accountability posits that "governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for expenditure of

and particularized policy" indicating that there is "a significant likelihood" that such deductions will be taken in specified circumstances.

Accordingly, the summary judgment of the district court in favor of defendant dismissing plaintiffs' claim in its entirety and mooting plaintiffs' motion for partial summary judgment is affirmed.

public funds."), *vacated on other grounds*, 1996 WL 481550 (N.D.N.Y. Aug.19, 1996), *aff'd*, 125 F.3d 31 (2d Cir.1997); *McCloskey v. Triborough Bridge & Tunnel Authority*, 903 F.Supp. 558, 566 (S.D.N.Y.1995); *Meringolo v. City of New York*, 908 F.Supp. 160, 168 (S.D.N.Y.1995); *cf. Service Employees International Union, Local 102 v. County of San Diego*, 60 F.3d 1346, 1352 n. 2 (9th Cir.1995) (striking down pre–1991 salary-basis test provision regarding part-pay docking as applied to public employers as an impermissible construction of the FLSA). It is not necessary for this Court to rule on this issue, however, because appellants are not "subject to" deductions for taking military leave or appearing as witnesses in non-Police Department related court proceedings.