**Lyn G. BONGAT, Marijo C. Colobong, Caryl Flores, Maria Corazon Nolasco Gavia, and Maria Christina Ycaza, Plaintiffs,**

v.

**FAIRVIEW NURSING CARE CENTER, INC., Defendant.**

**No. 02–CV–1158.**

United States District Court, E.D. New York.

Sept. 2, 2004.

Kenneth Andrew Goldberg, Goldberg & Fliegel LLP, New York City, for Plaintiffs.

Richard L. Steer, Jones Hirsch Connors & Bull P.C., New York City, for Defendant.

## OPINION & ORDER

FEUERSTEIN, District Judge.

### I. Introduction

Plaintiffs Lyn M. Bongat ("Bongat"), Marijo C. Colobong ("Colobong"), Caryl Flores ("Flores"), Maria Corazon Nolasco Gavia ("Gavia"), and Maria Christina Ycaza ("Ycaza") (collectively, "plaintiffs") are former employees of defendant Fair View Nursing Care Center, Inc. ("defendant"). Plaintiffs commenced this action against defendant claiming, *inter alia*, that they were denied wages and overtime compensation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York State Labor Law ("Labor Law"), N.Y. Lab. L. §§ 190–199, 650–665, and New York common law. Presently before the Court is plaintiffs' motion for partial summary judgment that defendant is liable under the aforementioned causes of action pursuant to Rule 56

of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## II. Standard of Review

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir.2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. *Id.* The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Id.* at 252, 106 S.Ct. 2505; *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

## III. Analysis

### A. Fair Labor Standards Act of 1938

■■■ The FLSA requires covered employees to compensate their employees, at a rate not less than one and one-half times their "regular rate," for hours worked in excess of forty (40) hours per week, 29 U.S.C. § 207(a)(1). However, § 207 is inapplicable to "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited . . . by regulations of the Secretary [of Labor]." *Id.* § 213(a)(1). The Secretary of Labor's regulations provide that an employee qualifies for the exemption if the employee is paid on a "salary basis" *and* satisfies a "duties" test. 29 C.F.R. §§ 541.1–541.3; *see also Kelly v. City of Mount Vernon*, 162 F.3d 765, 766 (2d Cir.1998). The employer bears the burden of proving that an employee falls within an exemption to the overtime requirement. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Freeman v. National Broad. Co., Inc.*, 80 F.3d 78, 82 (2d Cir. 1996). Since the FLSA is a remedial statute, the exemptions are to be narrowly construed and the employer must show that the employee fits "plainly and unmistakenly within [the exception's] terms." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *see also Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir.1991).

#### 1. Salary Basis Test

An employee will be considered to be paid on a salary basis:

> if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, *a predetermined amount* constituting all or part of his compensation, which amount is *not subject to reduction* because of variations in the quality or quantity of the work performed. Subject to . . . exceptions . . . , the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked . . . .

29 C.F.R. § 541.118(a) (emphasis added). Thus, an employee paid exclusively on an hourly basis does not fall within the definition of a "salaried" employee.

Although plaintiffs contend that they were employed at hourly wages, defendant claims that plaintiffs' payment was based upon an annual salary. According to plaintiffs, the time cards, payroll stubs, and check listings maintained by defendant prove that they were employed at hourly wages and that their weekly wages varied based upon the number of hours worked. Defendant counters that plaintiffs were paid a fixed salary per week and additional compensation based upon an hourly rate was paid at the management's discretion as an inducement to provide the facility with sufficient coverage.

■ Plaintiffs submitted listings of paychecks that state hourly and overtime rates and the amount paid based upon those rates. (Bongat Aff., exhs. E, F, G, H, I). However, this evidence is not necessarily dispositive. *See Wright v. Aargo Sec. Servs., Inc.*, No. 99–9115, 2001 WL 91705, at *7 (S.D.N.Y. Feb. 2, 2001) (" '[A] payroll accounting system which calculates an exempt employees [sic] pay on an hourly basis does not indicate that the employee was not salaried and, thus, is not subject to the FLSA's minimum wage or overtime wage requirements.' ") (quoting *Palazzolo–Robinson v. Sharis Mgmt. Corp.*, 68 F.Supp.2d 1186, 1192 (W.D.Wash.1999)). Instead, the relevant inquiry is whether an employee was paid a "predetermined amount" that was "not subject to reduction" on the basis of the quality or quantity of work performed. 29 C.F.R. § 541.118(a). "[I]f an employee can be docked for fractions of a workday missed, then that employee is an hourly, not a salaried, employee." *Whitmore v. Port Authority of New York & New Jersey*, 907 F.2d 20, 21 (2d Cir.1990); *see also Martin*, 949 F.2d at 615 ("Generally, an employer that maintains the discretion to reduce an employee's compensation as a result of the employee's hours ... may not consider the employee to be paid on a salary basis."). In *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court held that the standard for determining whether an employee's compensation is subject to reduction is if there is either an actual practice of making deductions or an employment policy that creates a significant likelihood of such deductions. *Id.* at 461, 117 S.Ct. 905.

■ Given defendant's record of payments, it is clear that there was an actual practice of reducing plaintiffs' compensation based upon the number of hours worked. For example, Bongat worked for fifty-eight and one-half (58.5) total hours during the pay period ending on June 23, 1999, for which she received $1504.00 in compensation (REG[1] hourly rate of $25.60 multiplied by 42.5 hours and RNS hourly rate of $26.00 multiplied by 16 hours). (Bongat Aff., exh. E). However, during the following pay period, Bongat worked for only seven (7) regular hours and was compensated $179.20 (REG hourly rate of $25.60 multiplied by 7 hours). (*Id.*).

Colobong worked for thirty (30) regular hours during the pay period ending on July 5, 2000, and was compensated $848.90 (REG hourly rate of $28.2967 multiplied by 30 hours). (*Id.*, exh. F). Yet during the pay period ending on August 16, 2000 Colobong worked for twenty-eight (28) regular hours and was compensated $792.31 (REG hourly rate of $28.2967 multiplied by 28 hours). (*Id.*).

During the pay period ending July 19, 2000, Flores worked for twenty-eight (28) regular hours and was compensated $830.77 (REG hourly rate of $29.6703 mul-

1. "REG" is the general work description for regular nursing duties while "RNS" signifies work as a "house supervisor" that includes elevated responsibilities. (Zwick Aff. para. 9).

tiplied by 28 hours). (*Id.*, exh. G). For the following pay period Flores worked fewer regular hours, twenty-one (21), and received smaller compensation, $623.08 (REG hourly rate of $29.6703 multiplied by 21 hours). (*Id.*).

Gavia worked for fourteen (14) RNS hours during the pay period ending on March 15, 2000 and was compensated $406.00 (RNS hourly rate of $29.00 multiplied by 14 hours). (*Id.*, exh. H). However, during the next pay period Gavia worked for only seven (7) RNS hours and was compensated $203.00 (RNS hourly rate of $29.00 multiplied by 7 hours). (*Id.*).

As for Ycaza, she worked for thirty-five (35) regular hours during the pay period ending on September 16, 1998 and was compensated $951.92 (REG hourly rate of $27.1978 multiplied by 35 hours). (*Id.*, exh. I). Yet for the pay period ending on September 30, 1998, Ycaza was only compensated $380.77 for fourteen (14) regular hours of work (REG hourly rate of $27.1978 multiplied by 14 hours). (*Id.*).

Defendant submitted two letters written by its director of nursing that state Bongat's employment is at an annual salary and argues that the payment of additional compensation on an hourly basis for time worked in excess of forty (40) hours per week does not render plaintiffs non-exempt employees. Although "additional compensation besides salary is not inconsistent with the salary basis of payment," 29 C.F.R. § 541.118(b), the evidence demonstrates that plaintiffs were not salaried employees since defendant's own records reveal that plaintiffs' compensation was subject to reduction for variations in the quantity of work performed and such evidence has not been overcome by defendant's submissions. Accordingly, there is no genuine issue of material fact as to the existence of an actual practice of making pay deductions.

### 2. Duties Test

Since defendant has not demonstrated the plaintiffs were paid on a salary basis, an analysis of the duties test is unnecessary.

Since defendant was an employer under the FLSA and failed to compensate plaintiffs, as non-exempt employees, at one and one-half times the regular rate for overtime work, plaintiffs' motion for summary judgment on the issue of liability under the FLSA is granted.

### 3. Portal–to–Portal Act Defense

■ The Portal–to–Portal Act, 29 U.S.C. § 259 (2004), protects employers from liability if they took certain actions on the basis of a government agency's interpretation of a law, even if the agency's interpretation later turned out to be incorrect. *Id.; EEOC v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir.1982). Pursuant to the statute, "no employer shall be subject to any liability or punishment for ... the failure ... to pay ... overtime compensation under the Fair Labor Standards Act ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. 259. Defendant asserts that in failing to pay statutory overtime to plaintiffs it relied upon Wage and Hour Division opinion letters that concluded that the payment of additional compensation beyond an exempt employee's guaranteed salary is not inconsistent with the salary basis of payment. However, since plaintiffs' salary was not guaranteed, *see supra* Part III. A.I, the opinion letters pertain to a com-

pensation arrangement distinguishable from the instant case. Moreover, defendant's alleged reliance upon certain verbal communications between the United States Department of Labor and another nursing home is misplaced since the statute only protects those employers who relied upon *written* administrative statements.

## B. New York Labor Law

New York labor law requires employers to pay employees time-and-a-half for work done in excess of forty (40) hours a week. N.Y. Comp.Codes R. & Regs. tit, 12, § 142–2.2 (2004). Similar to the FLSA, there is an exception for employees working in bona fide executive, administrative, or professional capacities. *Id.* § 142–2.14(c)(4). Since plaintiffs were not always paid a salary of at least $318.75 per week (and $386.25 per week on or after March 31, 2000), defendant cannot show that these individuals are exempt as executive or administrative employees. *See id.* §§ 142–2.14(c)(4)(i)(e); 142–2.14(c)(4)(ii)(d).

■ However, with respect to the professional capacity exception, "New York law differs from federal law ... in that to establish the exception, the employer need not satisfy a 'salary' test, only a duties test." *Dingwall v. Friedman Fisher Assocs.*, 3 F.Supp.2d 215, 220 (N.D.N.Y. 1998). The employer must only show that the employee was primarily engaged in work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study ...." N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.14(c)(4)(iii)(a). The language set forth in the New York Compilation of Codes, Rules and Regulations is almost identical to that used in 29 C.F.R. § 541.301(a), which outlines the duties test for professionals under the FLSA. *See* 29 C.F.R. § 541.301(a) ("the performance of

work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction"). According to 29 C.F.R. § 541.301(e)(2), nurses "who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption. Licensed practical nurses and other similar health care employees, however, generally do not qualify as exempt learned professionals because possession of a specialized advanced academic degree is not a standard prerequisite for entry into such occupations." *Id.* § 541.301(e)(2).

Here, plaintiffs were all registered nurses and therefore satisfy the duties test for the professional exemption. Accordingly, plaintiffs are exempt from the requirements of New York labor law and their motion for summary judgment regarding these claims is denied.

## C. Breach of Contract

■ Plaintiffs allege that defendant breached its contractual obligations to them by failing to pay wages and overtime compensation. To recover for breach of contract under New York law, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) performance under that contract; (3) defendant's breach of that contract; and (4) damage caused by the breach. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir.1994).

■ Plaintiffs claim that defendant's "Employee Handbook," which states that time-and-a-half compensation will be paid to non-management employees, constitutes a contract. However, the handbook also includes the following disclaimer: "The policies contained in this manual constitute management guidelines only and are in no way to be interpreted as a contract between Fairview and any of its employees."

(Zwick Aff., exh. C, at 1). The New York Court of Appeals has cautioned that "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Lobosco v. New York Tel. Co.*, 96 N.Y.2d 312, 317, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001). "An employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer." *Id.* Thus, the handbook does not constitute a contract between the parties.

▪ Although there is no written contract, "the existence of a contract may be established through the conduct of the parties recognizing the contract." *Apex Oil Co. v. Vanguard Oil & Service Co.*, 760 F.2d 417, 422 (2d Cir.1985); *see also Lumhoo v. Home Depot USA*, 229 F.Supp.2d 121, 161 (E.D.N.Y.2002). "In determining whether the parties entered into a contractual agreement . . . its is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elect. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399, 393 N.Y.S.2d 350, 361 N.E.2d 999 (1977). Here, it is difficult to ascertain the objective manifestations of the intent of the parties prior to the completion of discovery. Under Rule 56(f) of the Federal Rules of Civil Procedure, the Court has discretion to postpone ruling on a summary judgment motion if the party opposing the motion requires additional discovery "to explore facts essential to justify the party's opposition." *Crawford–El v. Britton*, 523 U.S. 574, 599, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (internal citation omitted). Since, at this time, it cannot be determined whether there are genuine issues of fact regarding the existence of a contract created through the conduct of the parties, the motion is denied as to plaintiffs' breach of contract claim with leave to renew upon completion of discovery.

### D. Unjust Enrichment and Quantum Meruit

▪ Plaintiffs claim that defendant has been unjustly enriched by failing to pay wages and overtime compensation for services rendered by plaintiffs to defendant. To prevail on a claim of unjust enrichment, a plaintiff must establish that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances are such that equity and good conscience require restitution. *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir.2001) (applying New York law). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.' " *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (4th Dep't 1999)). Plaintiffs also claim that they are entitled to quantum meruit recovery for the reasonable value of services performed for defendant. To establish a claim for quantum meruit under New York law, a plaintiff must show: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir.1994).

▪ Generally, if there is an adequate remedy at law, a court will not permit a claim in equity. *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 144 n. 6 (2d Cir.1999) ("[E]quity typically denied relief in a proceeding seeking restitution . . . on the theory of unjust enrichment because the remedy at law, an action for damages, typically was adequate."); *Crigger v. Fahnestock &*

*Co.,* No. 01–781, 2003 WL 22170607, at *12, 2003 U.S. Dist. LEXIS 16438, at *35 (S.D.N.Y. Sept. 18, 2003) ("Typically, where a remedy at law will provide an adequate action for compensatory damages, a court will not allow a claim in equity."); *Pereira v. United Jersey Bank, N.A.,* 201 B.R. 644, 677 (S.D.N.Y.1996) ("Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law.") (internal citation omitted). Since plaintiffs' FLSA claim and any viable claim for breach of contract would provide an adequate remedy at law, plaintiffs' claims based upon unjust enrichment and quantum meruit are dismissed.

IV. Conclusion

Plaintiffs' motion for summary judgment is GRANTED on the issue of liability under the FLSA and DENIED in all other respects. Plaintiffs' New York labor law, unjust enrichment, and quantum meruit claims are dismissed. The parties are directed to contact Magistrate Judge Chrein for further proceedings.

IT IS SO ORDERED.